THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ZELMA M. LOEB-DEFEVER and LOEB ARCHITECTS, LLC, | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 4:19-cv-00578-ALM |
| v. | § § | |
| STRATEGIC CONSTRUCTION, LTD. d/b/a FCI MULTI-FAMILY, ET AL., | § § § | |
| Defendants. | § § | |

## DEFENDANTS' JOINT MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER

_/s/ Paul L. Mitchell_
Paul L. Mitchell
Texas Bar No. 14217920
pmitchell@hicks-thomas.com
Courtney Ervin
Texas Bar No. 24050571
cervin@hicks-thomas.com
Leah M. Graham
Texas Bar No. 24073454
lgraham@hicks-thomas.com
HICKS THOMAS LLP
700 Louisiana, Suite 2000
Houston, Texas 77002
(713) 547-9100 (Telephone)
(713) 547-9150 (Facsimile)

COUNSEL FOR DEFENDANTS MAKO, LLC
D/B/A PADUA REALTY COMPANY,
FRANCISCO PADUA, ALEJANDRO PADUA,
ANTONIO PADUA, PADUA INVESTMENTS,
LTD., LUISFINA CORPORATION,
WOODHAVEN INMOBILIA, LTD., BRATTEN
INMOBILIA, LLC, INMOBILIA 2000, LLC,
TEXAS SENIOR LIVING MANAGER, LLC,
TEXAS SENIOR LIVING GROUP, LLC, TEXAS
SENIOR LIVING OPERATOR, LLC, AND
COTTAGES AT WOODHAVEN VILLAGE, LTD.

_/s/ Robert P. Latham_
Robert P. Latham
Texas Bar No. 11975500
blatham@jw.com
Justin V. Lee
Texas Bar No. 24097982
jlee@jw.com
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, Texas 75201
(214) 953-6000 (Telephone)
(214) 661-6663 (Facsimile)

Jennifer Caughey
Texas Bar No. 24080826
jcaughey@jw.com
JACKSON WALKER LLP
1401 McKinney St., Suite 1900
Houston, Texas 77010
(713) 752-4388 (Telephone)
(713) 308-4188 (Facsimile)

COUNSEL FOR DEFENDANTS PROPERO
CONROE, LLC, PROPERO SENIORS
HOUSING FUND, LLC, CPF LIVING
COMMUNITIES II-WOODHAVEN, LLC, CPF
LIVING COMMUNITIES II ACQUISITIONS,
LLC, AND GRACE MANAGEMENT, INC.

 */s/ Jessica L. Mangrum*
Jessica L. Mangrum
Texas Bar No. 24037021
jmangrum@thompsoncoe.com
THOMPSON COE, COUSINS & IRONS, LLP
700 Brazos, Suite 1500
Austin, Texas  78701
(512) 703-5014 (Telephone)
(512) 708-8777 (Facsimile)

COUNSEL FOR DEFENDANT TED TROUT
ARCHITECT AND ASSOCIATES, LTD.

 */s/ Patrick E. "Gene" Blanton*
Patrick E. "Gene" Blanton
Texas Bar No. 24058209
gblanton@slatesharwell.com
SLATES HARWELL, LLP
1700 Pacific, Suite 3800
Dallas, Texas  75201
(469) 317-1050 (Telephone)
(469) 317-1155 (Facsimile)

COUNSEL FOR DEFENDANTS STRATEGIC
CONSTRUCTION, LTD. D/B/A/ FCI MULTI-
FAMILY, PARTIN INVESTMENTS, LLC,
W&P I HOLDINGS, INC., ROBERT PARTIN,
SOVEREIGN BUILDERS GROUP, LTD.
D/B/A FCI MULTI FAMILY BUILDERS,
APPLIED ARCHITECTURAL PRODUCTS,
INC., TIMOTHY D. DIXON, FCI MULTI-
FAMILY GP, LLC, AND FCI MULTI-
FAMILY HOLDINGS, LLC

{00252289.DOCX}

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENTS AND AUTHORITIES ................................................................... 2

   A.   Motion to Dismiss For Improper Venue ......................................................... 2

      1.   Venue in this case is governed by 28 U.S.C. § 1400(a) .......................... 3

      2.   Plaintiffs cannot meet their burden to show that venue is proper in the
Eastern District ....................................................................................... 8

         a.   The Padua Defendants ..................................................................... 8

         b.   Trout .............................................................................................. 11

         c.   The Owner Defendants ................................................................. 13

         d.   The Construction Defendants ........................................................ 15

      3.   Because venue for Plaintiffs' Copyright Claims is not proper in this District, venue
over the entire action is improper and the case should be dismissed ................... 18

   B.   Alternatively, Motion to Transfer for Improper Venue ................................ 20

      1.   Transfer Under 28 U.S.C. § 1406(a) ..................................................... 20

      2.   Transfer Under 28 U.S.C. § 1404(a) ..................................................... 20

         a.   The threshold issue is met — Plaintiffs could have sued in the Southern District. 22

         b.   The private interest factors weigh in favor of transfer ............................ 22

         c.   The public interest factors weigh in favor of transfer ............................ 25

III. CONCLUSION AND PRAYER ......................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agribusiness United DMCC v. Blue Water Shipping Co.,*
Inc., CV H-16-2249, 2017 WL 1354144 (S.D. Tex. Apr. 13, 2017)........................................7

*Ambraco, Inc. v. Bossclip B.V.,*
570 F.3d 233 (5th Cir. 2009) ...............................................................................................3

*Asevedo v. NBC Universal Media, LLC,*
921 F.Supp.2d 573 (E.D. La. 2013)......................................................................................4, 6

*In re Big Commerce, Inc.,*
890 F.3d 978 (Fed. Cir. 2018)................................................................................................4

*BNSF Ry. Co. v. Tyrrell,*
137 S.Ct (2017).......................................................................................................................7

*Brayton Purcell LLP v. Recordon & Recordon,*
606 F.3d 1124 (9th Cir. 2010) ..............................................................................................6

*Bristol-Myers Squibb Co. v. Superior Court of California,*
137 S.Ct. 1773 (2017)..........................................................................................................5, 6

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)...............................................................................................................5

*Collins v. Doe,*
No. H-10-2882, 2012 WL 1414246 (S.D. Tex. Apr. 23, 2012)............................................18

*Daimler AG v. Bauman,*
571 U.S. 117 (2014)..........................................................................................................7, 8, 16

*EMED Techs. Corp. v. Repro-Med Sys., Inc.,*
2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)..............................1

*Gamboa v. USA Cycling, Inc.,*
No. 2:12-cv-10051-ODW, 2013 WL 1700951 (C.D. Cal Apr. 18, 2013) ............................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915, 131 S.Ct. 2846 (2011)...................................................................................7

*Just Film, Inc. v. Merchant Servs., Inc.,*
No. C 10-1993 CW, 2010 WL 4923146 (N.D. Cal. Nov. 29, 2010) .....................................10

*Langton v. Cbeyond Commc'n, L.L.C.*,
   282 F.Supp.2d 504 (E.D. Tex. 2003) ....................................................................3

*Limas v. Blatt*,
   No. 3:10-cv-915-O, 2010 WL 11618886 (N.D. Tex. Nov. 8, 2010) ..........................5

*Linzer v. EMI Blackwood Music, Inc.*,
   904 F.Supp. 207 (S.D.N.Y. 1995) .........................................................................6

*Maxchief Inv. Ltd. v. Plastic Dev. Grp., LLC*,
   No. 3:16-cv-63, 2017 WL 3479504 (E.D. Tenn. Aug. 14, 2017)............................5

*McCaskey v. Cont'l Airlines, Inc.*,
   133 F.Supp.2d 514 (S.D. Tex. 2001) ....................................................................3

*Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*,
   No. 18-3119 DSF, 2018 WL 6443083 (C.D. Cal. Aug. 28, 2018) ......................4, 6

*Monkton Ins. Services, Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ...............................................................................7

*Norsworthy v. Mystik Transport, Inc.*,
   430 F.Supp.2d 631 (E.D. Tex. 2006).....................................................................2

*Nuttall v. Juarez*,
   984 F.Supp.2d 637 (N.D. Tex. 2013) ....................................................................5

*Realtime Data LLC v. Nexenta Sys., Inc.*,
   No. 2:17-07690 SJO, 2018 WL 2724776 (C.D. Cal. Jan. 23, 2018) ........................4

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*,
   No. 6:16-cv-298-RWS-KNM, 2017 WL 3671377 (E.D. Tex. Feb. 9, 2017) ...............3, 21, 22

*Shropshire v. Fred Rappoport Co.*,
   294 F.Supp.2d 1085 (N.D. Cal. 2003) ...................................................................6

*Steen v. Murray*,
   770 F.3d 698 (8th Cir. 2014) ..............................................................................18

*Suckafree Records v. OarFin Distrib.*,
   No. 4:12-2337, 2013 WL 12158149 (S.D. Tex. May 7, 2013)..................................5

*Sunday Riley Modern Skin Care, L.L.C. v. Maesa*,
   No. H-12-1650, 2013 WL 5231860 (S.D. Tex. Sep. 12, 2013)..............................10

*Taylor v. Turner Indus. Grp., LLC*,
   No. 2:11-cv-57, 2011 WL 13134192 (E.D. Tex. June 20, 2011) ................................2, 19, 23

*Time, Inc. v. Manning,*
    366 F.2d 690 (5th Cir. 1966) ...........................................................................................3

*Tinnus Enter. LLC v. Telebrands Corp.,*
    No. 6:15-cv-00551 RWS-JDL, 2015 WL 11090494 (E.D. Tex. Aug. 31, 2015 ............ *passim*

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ......................................................................................21, 23

*In re Volkswagen of America, Inc.,*
    545 F.3d 304 (5th Cir. 2008) (en banc) .................................................................21, 22, 23

*Weaver v. United States,*
    298 F.2d 496 (5th Cir. 1962) ........................................................................................24

**Statutes**

28 U.S.C. § 1391 ...............................................................................................3, 18, 19

28 U.S.C. § 1391(a) ....................................................................................................18

28 U.S.C. § 1391(b) ....................................................................................................18

28 U.S.C. § 1400(a) ..............................................................................................*passim*

28 U.S.C. § 1400(b) ...................................................................................................4, 5

28 U.S.C. § 1404(a) ..............................................................................................*passim*

28 U.S.C. § 1406(a) ..............................................................................................*passim*

Digital Millennium Copyright Act.....................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(3) ........................................................................ *passim*

Federal Rule of Civil Procedure 45(c)(1)(A).............................................................................23

All served Defendants[1] jointly file this Motion to Dismiss for Improper Venue[2] under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, Motion to Transfer under 28 U.S.C. § 1406(a) or § 1404(a) and, in support thereof, would respectfully show the Court as follows:

## I.
## INTRODUCTION

1.     This is a copyright infringement case involving a senior living facility called Woodhaven Village (the "Woodhaven Project"), located at 2275 Riverway Drive, Conroe, Montgomery County, Texas 77304, which is in the Southern District of Texas, Houston Division ("Southern District").  As shown below, none of the activity alleged in Plaintiffs' Complaint took place in the Eastern District of Texas (the "Eastern District"), including the planning, design, purchase, financing, construction, marketing, advertising, leasing, or sales of the Woodhaven Project.

2.     Pursuant to FRCP 12(b)(3) and 28 U.S.C. § 1406(a), dismissal of Plaintiffs' claims for copyright infringement and violations of the Digital Millennium Copyright Act (the "DMCA") (collectively, the "Copyright Claims"), as well as the breach of contract and tortious interference with contract claims (collectively, the "Contract Claims"), is proper, because this District is an inappropriate venue to adjudicate Plaintiffs' claims.

3.     It is well-established that venue in this copyright case is governed exclusively by 28 U.S.C. § 1400(a), which allows venue in any judicial district in which the defendant resides or

---

[1] As of the date of filing, Defendant Doe, as administrator or executor of the estate of Whitson B. Etheridge, II (the "Estate") does not appear to have been served with process.

[2] In their attempt to comply with the District's Local Rules governing the permissible length of dispositive and non-dispositive motions, Defendants relied upon *EMED Technologies Corporation v. Repor-Med Systems, Inc.,* which concluded that a Motion to Dismiss pursuant to Federal Rule 12(b)(3) "is a dispositive motion." *EMED Techs. Corp. v. Repro-Med Sys., Inc.,* 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *4 n.4 (E.D. Tex. June 4, 2018). Accordingly, Defendants prepared this motion to comply with Local Rule CV-7(a)(1), which allows a movant thirty pages, excluding attachments, to present a dispositive motion.

would be subject to personal jurisdiction if that judicial district were a separate state.  Plaintiffs bear the burden of establishing that venue in the Eastern District is proper as to *each* Defendant and *each* claim.  Plaintiffs have not—and cannot—satisfy this burden.  None of the individual defendants reside in or are domiciled in the Eastern District.  Similarly, none of the entity defendants maintains their respective principal offices in the Eastern District.  Knowing venue is lacking at least as to the Copyright Claims, Plaintiffs argue for the application of pendent venue.  The doctrine of pendent venue, however, is not applicable in this case.  Consequently, dismissal of Plaintiffs' Copyright and Contract Claims is appropriate.

4.      Alternatively, Defendants request that this Court transfer this case to the Southern District, which is a court of proper venue as to all parties and claims.  When venue is improper— as it is in this case—28 U.S.C. § 1406(a) gives the Court discretion to transfer the case to a court of proper venue.  In the further alternative, Defendants request that this Court transfer this action to the Southern District pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

## II.
## ARGUMENTS AND AUTHORITIES

### A.      Motion to Dismiss For Improper Venue

5.      Dismissal of Plaintiffs' claims against Defendants is proper under Federal Rule of Civil Procedure 12(b)(3) because the Eastern District is an improper venue for adjudicating this dispute.[3]  Rule 12(b)(3) and 28 U.S.C. § 1406(a) "authorize a court, upon suitable showing, to dismiss an action where venue in that court is improper."  *Norsworthy v. Mystik Transport, Inc.*, 430 F.Supp.2d 631, 633 (E.D. Tex. 2006).  *See also Tinnus Enter. LLC v. Telebrands Corp.*, No.

---

[3] "Federal Rule of Civil Procedure 12(b)(3) states that the court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiffs' chosen forum." *Taylor v. Turner Indus. Grp., LLC,* No. 2:11-cv-57, 2011 WL 13134192, at *1 (E.D. Tex. June 20, 2011).

6:15-cv-00551 RWS-JDL, 2015 WL 11090494, at *2 (E.D. Tex. Aug. 31, 2015) ("Federal Rule of Civil Procedure 12(b)(3) provides a defense to a claim where venue is improper.").  If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

6.     Once a defendant raises the issue of improper venue, the plaintiff bears the burden to prove that the chosen venue is proper.  *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F.Supp.2d 504, 508 (E.D. Tex. 2003).  "[I]t is well-established that, in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to **each** claim and as to **each** defendant."  *McCaskey v. Cont'l Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D. Tex. 2001) (emphasis added).  *See also Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, No. 6:16-cv-298-RWS-KNM, 2017 WL 3671377, at *8 (E.D. Tex. Feb. 9, 2017) ("In actions involving multiple defendants and multiple claims, the plaintiff must establish that venue is proper as to each defendant and as to each claim.").  In determining whether venue is proper, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

### 1.     Venue in this case is governed by 28 U.S.C. § 1400(a).

7.     Plaintiffs acknowledge that venue of their Copyright Claims are governed by 28 U.S.C. § 1400(a)—a specialized venue statute.[4]  *See Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966) (noting that copyright claims are governed by 28 U.S.C. § 1400(a), not 28 U.S.C. § 1391).  28 U.S.C. § 1400(a) provides: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be

---

[4] *See* Plaintiffs' Complaint at ¶ 46.

instituted in the district in which the defendant or his agent *resides or may be found*."  28 U.S.C. § 1400(a) (emphasis added).

8.      An individual defendant "resides" in the district of the individual's residence or legal domicile.  *Asevedo v. NBC Universal Media, LLC*, 921 F.Supp.2d 573, 590 (E.D. La. 2013) (citing 17 Moore's Federal Practice 3d § 110.03 (2002)) ("It is well established that an individual defendant 'resides' for venue purposes in the district of his residence or legal domicile.").

9.      For entity defendants, residence is determined by the place of incorporation and where the entity maintains its principal place of business.   In a multi-district state—such as Texas—where an entity defendant is incorporated in the state, courts look to the judicial district where the entity maintains its principal place of business.  *See e.g., In re Big Commerce, Inc.*, 890 F.3d 978, 986 (Fed. Cir. 2018) (holding under 28 U.S.C. § 1400(b), the patent venue statute, that venue was improper in the Eastern District of Texas because the Texas corporation defendant maintained both its principal place of business and registered office in the Western District of Texas); *Realtime Data LLC v. Nexenta Sys., Inc.,* No. 2:17-07690 SJO (JCx), 2018 WL 2724776, at *3-4 (C.D. Cal. Jan. 23, 2018) (holding under § 1400(b) venue was improper in the Central District of California; although the corporate defendant was incorporated in California, it had its principal place of business in the Northern District of California); *Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. 18-3119 DSF (RAOx), 2018 WL 6443083, at *3 (C.D. Cal. Aug. 28, 2018) (because of the similarities between § 1400(a) and § 1400(b), the same reasoning applies to the copyright venue statute).  This is true regardless of whether the entity is a corporation or an unincorporated association, such as limited liability companies or

limited partnerships.  *See Maxchief Inv. Ltd. v. Plastic Dev. Grp., LLC*, No. 3:16-cv-63, 2017 WL 3479504, at *2 (E.D. Tenn. Aug. 14, 2017).[5]

10.     Under § 1400(a), a defendant "may be found" in any judicial district in which it has minimum contacts sufficient to establish personal jurisdiction in that district if it were its own state.  *Suckafree Records v. OarFin Distrib.*, No. 4:12-2337, 2013 WL 12158149, at *5 fn. 3 (S.D. Tex. May 7, 2013) ("Courts have interpreted § 1400(a) to allow venue in any judicial district in which the defendant would be subject to personal jurisdiction if that judicial district were a separate state."); *Limas v. Blatt*, No. 3:10-cv-915-O, 2010 WL 11618886, at *3 (N.D. Tex. Nov. 8, 2010).   "Personal jurisdiction in a particular judicial district exists where (1) Defendants have purposefully availed themselves of the benefits and protections of the judicial district by establishing *minimum contacts with the district*; and (2) the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice."  *Tinnus Enter., LLC,* 2015 WL 11090494, at *2 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-20 (1945)) (emphasis added); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985)).  In determining whether personal jurisdiction exists, the "'primary concern' is 'the burden on the defendant.'"  *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1783 (2017).

11.     This venue/personal jurisdiction "inquiry is conducted as if the district were its own state."  *Nuttall v. Juarez*, 984 F.Supp.2d 637, 645 (N.D. Tex. 2013).  "When considering whether venue is proper, the Court's scope of determination is limited to a personal jurisdiction

---

[5] "Unincorporated associations, such as limited liability companies, are generally treated like corporations for purposes of venue, whereby the 'residence' is the association's principal place of business.  Now that the Supreme Court has reinforced that 'residence' for corporate defendants in a patent infringement case is limited to the state of incorporation, [Plaintiff] is hard-pressed to present a reason why unincorporated associations should be treated differently.  **Indeed, the language of § 1400(b) refers to a 'defendant' and is not limited only to corporate defendants.**"  *Id.* (emphasis added).

inquiry within its own judicial district." *Tinnus Enter., LLC*, 2015 WL 11090494, at *2.  *See also Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1126 (9th Cir. 2010) (In copyright infringement actions, a defendant "may be found" "in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction."); *Asevedo*, 921 F.Supp.2d at 590; *Shropshire v. Fred Rappoport Co.*, 294 F.Supp.2d 1085, 1094 (N.D. Cal. 2003) (noting that the venue inquiry is conducted as if the district were its own state); *Linzer v. EMI Blackwood Music, Inc.*, 904 F.Supp. 207, 215 (S.D.N.Y. 1995) ("A defendant 'may be found' wherever that person is amenable to personal jurisdiction.").  In a multi-district state, the fact that an entity is created under the law of that state is insufficient for it to be "found" in every district in the state; instead, it is only "found" in the judicial district in which it maintains its principal place of business.  *Michael Grecco Prods., Inc.*, 2018 WL 6443083, at *2-3.

12.     There are two types of personal jurisdiction—general and specific.  "In order for a court to exercise specific [personal] jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'  When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'"  *Bristol-Myers Squibb Co.,* 137 S.Ct. at 1781.  Plaintiffs do not plead any facts that would support this Court's exercise of specific jurisdiction over any of the Defendants; none of Plaintiffs' claims or the transactions or events at issue have any connection whatsoever with the Eastern District.

13.     In contrast to specific personal jurisdiction, general personal jurisdiction exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from

dealings entirely distinct from those activities.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 127

(2014) (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

14.     The days where general jurisdiction could be established by showing that a

defendant conducted unrelated business in the state or maintained an office there are over.

Beginning with *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct.

2846 (2011), the Supreme Court began significantly constricting the type of contacts with the

forum state that are required to establish general personal jurisdiction, essentially limiting it to

the state of incorporation and principal place of business:

> The "paradigm" forums in which a corporate defendant is "at home," we
> explained, are the corporation's place of incorporation and its principal
> place of business.  The exercise of general jurisdiction is not limited to
> these forums; in an "exceptional case," a corporate defendant's
> operations in another forum "may be so substantial and of such a nature
> as to render the corporation at home in that State."

*BNSF Ry. Co. v. Tyrrell,* 137 S.Ct, 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. 117, 137, 134

S. Ct. at 760) (2,000 miles of railroad track and more than 2,000 employees in Montana

insufficient to establish general personal jurisdiction); *see also Monkton Ins. Services, Ltd. v.

Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (recognizing that it is "difficult to establish general

jurisdiction in a forum other than the [corporation's] place of incorporation or principal place of

business."); *Agribusiness United DMCC v. Blue Water Shipping Co.*, Inc., CV H-16-2249, 2017

WL 1354144, at *6 (S.D. Tex. Apr. 13, 2017) (finding that although the defendant maintained an

office in Texas, considering the size of defendant's company and percentage of overall business

that takes place in Texas, the defendant "remains at home only in Louisiana," where it is

incorporated and maintains its principal office).  This inquiry "does not focus solely on the

magnitude of the defendant's . . . contacts" but instead "calls for an appraisal of a corporation's

activities in their entirety." *Daimler,* 571 U.S. at 139, n. 20 ("[a] corporation that operates in many places can scarcely be deemed at home in all of them.").

> **2. Plaintiffs cannot meet their burden to show that venue is proper in the Eastern District.**

15.      To establish proper venue under 28 U.S.C. § 1400(a), Plaintiffs must prove that *each* defendant either "resides or may be found" in the Eastern District.   Accordingly, each Defendant or group of Defendants is separately analyzed.   As shown below, none of the Defendants reside in or may be found in the Eastern District.

> **a.     *The Padua Defendants***

16.      As set forth in the Declaration of Antonio Padua,[6] *none* of the Padua Defendants[7] reside in the Eastern District or have any connection to the Eastern District.   Specifically, *none* of the Padua Defendants: (i) reside in any county encompassed within the Eastern District; (ii) maintain a principal place of business in the Eastern District; (iii) maintain any office or place of business in the Eastern District; (iv) own or lease real or personal property located in the Eastern District; (v) maintain a bank account at any bank located within the Eastern District; (vi) distribute any advertising or marketing materials within the Eastern District; or (vii) solicit or conduct business in the Eastern District.[8]

17.      Additionally, Plaintiffs do not contend—and there is no evidence to support—that any of Plaintiffs' claims arise out of or relate to the Padua Defendants' contacts with the Eastern

---

[6] The Declaration of Antonio Padua is attached hereto as **Exhibit 1** (the "Padua Decl."), and is incorporated by reference as if set forth fully herein.

[7] The "Padua Defendants" collectively refers to MAKO, LLC d/b/a Padua Realty Company ("Padua Realty"), Francisco Padua, Alejandro Padua, Antonio Padua, Padua Investments, Ltd. ("Padua Investments"), Luisfina Corporation ("Luisfina"), Woodhaven Inmobilia, Ltd. ("Woodhaven"), Bratten Inmobilia 2000, LLC ("Bratten"), Inmobilia 2000, LLC ("Inmobilia 2000"), Texas Senior Living Manager, LLC ("TSL Manager"), Texas Senior Living Group, LLC ("TSL Group"), Texas Senior Living Operator, LLC ("TSL Operator"), and Cottages at Woodhaven Village, Ltd. ("Woodhaven Cottages") (all represented by the law firm Hicks Thomas LLP).

[8] *See* Exhibit 1, Padua Decl. at ¶¶ 4, 5, and 16.

District (of which there are none).  In fact, Plaintiffs appear to concede that venue is *not* proper under § 1400(a) as to the Padua Defendants, identifying only three of the 29 defendants as allegedly being subject to venue under § 1400(a).[9]  Even Plaintiffs' own venue allegations support the Padua Defendants' position that the Eastern District is an improper venue for resolution of Plaintiffs' claims against any of them.

18.   Accepting, without conceding, the factual allegations in Plaintiffs' Complaint, Plaintiffs' claims are based on allegations that:

- The Woodhaven Project is located in Montgomery County, Conroe, Texas;[10]

- Conceptual building plans were delivered to Padua Realty in Houston;[11]

- A building application for the Woodhaven Project was filed in the City of Conroe;[12]

- Woodhaven owned, and subsequently sold a portion of, real property located in Conroe;[13]

- TSL Operator leased "infringing units" located in Conroe;[14]

- Woodhaven sold a two-acre site located in Conroe to Woodhaven Cottages;[15]

- Woodhaven Cottages built cottages in Conroe "based on Trout's infringing plans;"[16]

- Strategic Construction constructed buildings in Conroe based on Trout's infringing plans;[17] and

---

[9] *See* Plaintiffs' Complaint at ¶46.

[10] *See id.* at ¶¶ 50-51.

[11] *See id.* at ¶ 54 ("The site, building plans, individual unit and cottage plans and elevations . . . were delivered to Padua Realty.").

[12] *Id.* at ¶ 62. ("Sovereign filed an application for a building permit with the City of Conroe.").

[13] *See id.* at ¶ 64.

[14] *See id.* at ¶ 70.  ("Defendant [TSL] Operator infringed Loeb's copyright in her Woodhaven design by leasing infringing units in the independent living, assisted living and memory care facility.").

[15] *Id.* at ¶ 72.

[16] *Id.* ("By constructing buildings based on Trout's infringing plans, and by renting these infringing cottage buildings, Woodhaven Cottages infringed Loeb's copyright in her Woodhaven design.").

[17] *Id.* at ¶ 68 ("By constructing buildings based on Trout's infringing plans, Strategic Construction made infringing copies of Loeb's Woodhaven design.").

- TSL Operator purchased, and subsequently sold, the site in Conroe.[18]

19.     While Plaintiffs contend "Padua Realty . . . provided Loeb's Woodhaven design to Defendant Trout," and "Trout prepared virtually identical copies and/or derivatives of Loeb's Woodhaven design," Plaintiffs do not plead that this alleged disclosure and copying occurred in the Eastern District.[19]  Given that both Padua Realty and Trout are located in Houston, it stands to reason that any such disclosure or copying occurred, if at all, in Houston.[20]  In fact, Padua Realty and Trout conducted no activity relating to the Woodhaven Project in the Eastern District.[21]  Plaintiffs' allegations—if they are to be believed—make it clear that none of the relevant acts or omissions upon which Plaintiffs' claims are based occurred within the Eastern District.  Accordingly, Plaintiffs have failed to establish that any, let alone *each*, of the Padua Defendants are subject to specific personal jurisdiction in this District.

20.     Additionally, as to nine of the thirteen Padua Defendants, Plaintiffs' Complaint is devoid of any allegations of any specific act contributing or giving rise to Plaintiffs' claims.[22]  Instead, Plaintiffs' Complaint only alleges that certain Padua Defendants were principals or members of entities that engaged in allegedly infringing conduct.[23]    "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."  *Sunday Riley Modern Skin Care, L.L.C. v. Maesa*, No. H-12-1650, 2013 WL 5231860, at *3 (S.D. Tex. Sep. 12, 2013); *see also Just Film, Inc. v. Merchant Servs., Inc.*, No. C 10-1993 CW, 2010 WL 4923146, at *6 (N.D. Cal.

---

[18] *Id.* at ¶¶ 76-77, 79. ("By selling the property . . . [TSL] Operator infringed Loeb's copyright . . . .").

[19] *Id.* at ¶ 60.

[20] *See* Exhibit 1, Padua Decl. at ¶¶ 4-5.  *See also* Exhibit 2, Trout Decl. (defined below) at ¶¶ 3-4.

[21] Exhibit 1, Padua Decl. at ¶ 17.  Exhibit 2, Trout Decl. at ¶ 4.

[22] Specifically, Plaintiffs' Complaint fails to allege any wrongdoing by each of the following Padua Defendants: (1) Francisco Padua; (2) Antonio Padua; (3) Alejandro Padua; (4) Bratten; (5) Inmobilia 2000; (6) Padua Investments; (7) Luisfina; (8) TSL Manager; and (9) TSL Group.

[23] *See* Plaintiffs' Complaint at ¶¶ 19-21, 25-28, and 35-36.

Nov. 29, 2010) (concluding that plaintiffs did not meet their burden to show specific personal jurisdiction over certain individual defendants where plaintiffs alleged only that those individual defendants directed and controlled entities alleged to have engaged in the wrongful conduct and did not allege how those individual defendants directed or controlled those entities).

21.     These facts, as described in detail in the Padua Declaration, coupled with Plaintiffs' own failure to plead any facts that show any of the Padua Defendants reside in or may be found in the Eastern District, establish that venue is not proper in this district as to ***all*** of the Padua Defendants. For the reasons set forth above, this case should be dismissed as to the Padua Defendants pursuant to Federal Rule 12(b)(3) and 28 U.S.C. § 1406(a).

### b.     *Trout*

22.     As set forth in the declaration of Cesar Corrales,[24] Ted Trout Architect & Associates, Ltd. ("Trout") does not reside in the Eastern District and may not be found here.[25] Trout does not maintain a place of business in the Eastern District, it currently conducts no business in this District, nor does it have any employees working on its behalf in this District.[26] Trout has never owned, leased, or rented any property located in the Eastern District, and Trout does not currently—nor has it ever—maintained a bank account in the Eastern District.[27]

23.     Trout did not execute any contracts with respect to the Woodhaven Project, have any meetings, or perform any alleged acts or omissions relating to any contract with respect to

---

[24] The Declaration of Cesar Corrales is attached hereto as **Exhibit 2** (the "Trout Decl."), and is incorporated by reference as if set forth fully herein.

[25] Trout is represented by the law firm Thompson Coe, Cousins & Irons, LLP.

[26] Exhibit 2, Trout Decl. at ¶ 3.

[27] *Id.*

the Woodhaven Project while in the Eastern District.[28]  None of Trout's activities relating to the Woodhaven Project took place in the Eastern District.[29]

24.     Notably, Plaintiffs' Complaint does not allege that any of Trout's activities related to the Woodhaven Project took place in the Eastern District. Plaintiffs allege Trout "distributed false copyright management information," but Plaintiffs fail to assert that any alleged distribution occurred in the Eastern District.[30]  The Woodhaven Project is located in Conroe, Texas, and all documents in Trout's possession that are potentially relevant to this dispute are located in Houston, Texas.[31]  Likewise, all potential witnesses associated with Trout are located in the greater Houston metropolitan area; none are located within 100 miles of Sherman, Texas.[32]  For example, former Trout employee Angelica Batac and current Trout employee Giovanni Fazzolari—both of whom actually worked on the Project—currently reside in the greater Houston metropolitan area.[33]

25.     These facts, as described in detail in the Trout Declaration, coupled with Plaintiffs' own failure to plead any facts that establish that Trout resides in or may be found in the Eastern District, establish that venue is not proper in this District as to Trout.  For the reasons set forth above, this case should also be dismissed as to Trout pursuant to Federal Rule 12(b)(3) and 28 U.S.C. § 1406(a).

---

[28] *Id.* at ¶ 4.

[29] *Id.*

[30] *See* Plaintiffs' Complaint at ¶ 61.

[31] Exhibit 2, Trout Decl. at ¶ 5.

[32] *Id.* at ¶ 6.

[33] *Id.*

c.    *The Owner Defendants*

26.    As set forth in the declarations of James P. Hackett, Jr. and Jay Flatt,[34] venue in the Eastern District is improper, because none of the Owner Defendants reside or may be found there.[35]

27.    Propero Conroe, LLC ("Propero") is an Ohio limited liability company with its principal place of business in Columbus, Ohio.[36]  Propero does not have any offices, employees, or bank accounts within the Eastern District, and has never owned, leased, rented, or developed any property located within the Eastern District.[37]  All paper and electronic documents potentially relevant to this case that are in the possession of Propero are located at its Columbus, Ohio office.[38]  All potential witnesses associated with Propero are located in Ohio.[39]

28.    Propero Seniors Housing Equity Fund, LLC ("Propero Fund") is a Delaware limited liability company with its principal place of business in Columbus, Ohio.[40]  Propero Fund does not have any offices, employees, or bank accounts within the Eastern District, and has never owned, leased, rented, or developed any property located within the Eastern District.[41]  All paper and electronic documents potentially relevant to this case that are in the possession of Propero

---

[34] The Declaration of James P. Hackett, Jr. is attached hereto as **Exhibit 3** (the "Propero Decl.")**,** and is incorporated by reference as if set forth fully herein.  The Declaration of Jay Flatt, on behalf of CPF Living Communities II-Woodhaven, LLC and CPF Living Communities II Acquisitions, LLC is attached hereto as **Exhibit 4** (the "CPF Decl."), and is incorporated by reference as if set forth fully herein.  The Declaration of Jay Flatt, on behalf of Grace Management, Inc. is attached hereto as **Exhibit 5** (the "Grace Decl."), and is incorporated by reference as if set forth fully herein.

[35] The "Owner Defendants" collectively refers to Propero Conroe, LLC ("Propero"), Propero Seniors Housing Equity Fund, LLC ("Propero Fund"), CPF Living Communities II-Woodhaven, LLC ("CPF-Woodhaven"), CPF Living Communities II Acquisitions, LLC ("CPF-Acquisitions"), and Grace Management, Inc. ("Grace") (all represented by the law firm Jackson Walker LLP).

[36] Exhibit 3, Propero Decl. at ¶ 3.

[37] *Id.*

[38] *Id.* at ¶ 7.

[39] *Id.*

[40] *Id.* at ¶ 4.

[41] *Id.*

Fund are located at its Columbus, Ohio office.[42]  All potential witnesses associated with Propero Fund are located in Ohio.

29.     CPF-Woodhaven is a Delaware limited liability company with its principal place of business in Chicago, Illinois.[43]  CPF-Woodhaven does not have any offices, employees, or bank accounts within the Eastern District, and has never owned, leased, rented, or developed any property located within the Eastern District.[44]  All paper and electronic documents potentially relevant to this case that are in the possession of CPF-Woodhaven are located at its Chicago, Illinois office.[45]  All potential witnesses associated with CPF-Woodhaven are located in Illinois.[46]

30.     CPF Living Communities II Acquisitions, LLC ("CPF-Acquisitions") is also a Delaware limited liability company with its principal place of business in Chicago, Illinois.[47]  CPF-Acquisitions does not have any offices, employees, or bank accounts within the Eastern District, and has never owned, leased, rented, or developed any property located within the Eastern District.[48]  All paper and electronic documents potentially relevant to this case that are in the possession of CPF-Acquisitions are located at its Chicago, Illinois office.[49]  All potential witnesses associated with CPF-Acquisitions are located in Illinois.[50]

---

[42] *Id.* at ¶ 7.

[43] Exhibit 4, CPF Decl. at ¶ 3.

[44] *Id.* at ¶¶ 3 and 5.

[45] *Id.* at ¶ 7.

[46] *Id.*

[47] *Id.* at ¶ 4.

[48] *Id.*

[49] *Id.* at ¶ 7.

[50] *Id.*

31.     Grace Management, Inc. ("Grace") is a Texas corporation with its principal place of business in Maple Grove, Minnesota.[51]  Grace does not have any offices, employees, or bank accounts within the Eastern District, and has never owned, leased, rented, or developed any property within the Eastern District.[52]  All paper and electronic documents potentially relevant to this case that are in the possession of Grace are located at its Maple Grove, Minnesota office.[53]  All potential witnesses associated with Grace are located in Minnesota.[54]  While it is true that Grace manages a single assisted living facility in Beaumont (which is within the Eastern District), the Beaumont facility is completely unrelated to the Woodhaven Project and has no connection to the allegations and claims raised in Plaintiffs' Complaint.[55]

32.     These facts, as described in detail in the declarations of Jay Flatt and James P. Hackett, Jr., coupled with Plaintiffs' own failure to plead any facts that show any of the Owner Defendants either reside in or can be found in the Eastern District, establish that venue is not proper in this District as to *any* of the Owner Defendants.  Accordingly, this case should be dismissed as to the Owner Defendants pursuant to Federal Rule 12(b)(3) and 28 U.S.C. § 1406(a).

### d.     *The Construction Defendants*

33.     As established by the declarations of Robert Partin and Timothy G. Dixon,[56] venue in this District is improper as to Plaintiffs' claims against the Construction Defendants.[57]

---

[51] *See* Exhibit 5, Grace Decl. at ¶ 2.

[52] *Id.*

[53] *Id.* at ¶ 5.

[54] *Id.*

[55] *Id.* at ¶¶ 3-4.

[56] The Declaration of Robert Partin is attached hereto as **Exhibit 6** (the "Partin Decl."), and is incorporated by reference as if set forth fully herein.  The Declaration of Timothy G. Dixon is attached hereto as **Exhibit 7** (the "Dixon Decl."), and is incorporated by reference as if set forth fully herein.

34.     None of the individual Construction Defendants—Robert Partin and Timothy Dixon—reside, or have ever resided, in the Eastern District.[58]  None of the entity Construction Defendants—Strategic Construction, Partin Investments, W&P, Sovereign, Applied Architectural, FCI GP, and FCI Holdings—maintain their respective principal places of business in the Eastern District.[59]  Partin Investments, W&P, FCI GP, and FCI Holdings have no connection to the Eastern District.  Specifically, these entities do not: (1) maintain, and have never maintained, a principal place of business in the Eastern District; (2) own or lease real property located in the Eastern District; or (3) maintain a bank account in any bank located within the Eastern District.[60]

35.     Strategic Construction does not have minimum contacts with the Eastern District sufficient to establish personal jurisdiction in this District. Strategic Construction is a Texas limited partnership that, since its inception, has maintained its principal place of business in Houston, Texas.[61]  *See Daimler*, 134 S. Ct. at 760 (noting that for a corporation, the "paradigm bases for general jurisdiction" are the corporation's place of incorporation and the principal place of business).  Although Strategic Construction previously maintained a satellite office in the Eastern District, it does not have minimum contacts with the district sufficient to establish personal jurisdiction in the Eastern District.  Strategic Construction's satellite office in the Eastern District has been relocated to Dallas County, city of Richardson, Texas, which is located

---

[57] The "Construction Defendants" collectively refers to Strategic Construction, Ltd. ("Strategic Construction"), Partin Investments, LLC ("Partin Investments"), W&P I Holdings, Inc. ("W&P"), Robert Partin, Sovereign Builders Group, Ltd. d/b/a FCI Multi-Family Builders ("Sovereign"), Applied Architectural Products, Inc. ("Applied Architectural"), Timothy G. Dixon, FCI Multi-Family GP, LLC ("FCI GP"), and FCI Multi-Family Holdings, LLC ("FCI Holdings") (all represented by the law firm Slates Harwell, LLP).

[58] Exhibit 6, Partin Decl. at ¶¶ 4-5.  Exhibit 7, Dixon Decl. at ¶¶ 4-5.

[59] Exhibit 6, Partin Decl. at ¶¶ 7, 12, and 14-16.  Exhibit 7, Dixon Decl. at ¶¶ 7-8, and 10.

[60] Exhibit 6, Partin Decl. at ¶¶ 12, and 14-16.  Exhibit 7, Dixon Decl. at ¶¶ 8 and 10-11.

[61] Exhibit 6, Partin Decl. at ¶ 7.

in the Northern District of Texas.[62]  Strategic Construction employs forty-four (44) employees;[63] seven (7) of these employees office outside of Strategic Construction's primary office.[64] Strategic Construction does not lease or own real property in the Eastern District.[65]  From its inception through June 2019, Strategic Construction's total gross revenue realized from construction projects is $515 million.[66]  Of this, only $45.7 million is attributed to construction projects in the Eastern District, which is less than 9% of Strategic Construction's overall gross revenue.[67]  Accordingly, this Court does not have general personal jurisdiction over Strategic Construction because Strategic Construction does not have its principal place of business in the Eastern District, and this is not an exceptional case in which Strategic Construction's affiliations with the Eastern District are so substantial as to render it "at home" in the Eastern District.

36.     While Plaintiffs contend "on information and belief, one or more of the Construction Defendants was the origin of the idea to use Trout on the Woodhaven Village Project instead of Plaintiffs," Plaintiffs do not identify where this alleged interference, if any, occurred.[68]  Given that Construction Defendants and Padua Realty are located in Houston, however, it would stand to reason that any such suggestion to go forward with Trout instead of Plaintiffs occurred—if at all—in Houston.  Moreover, Plaintiffs fail to allege any wrongdoing by Defendants Timothy Dixon, Applied Architectural, FCI GP, and FCI Holdings.  In fact, Plaintiffs

---

[62]   At the time of filing Plaintiffs' Complaint, Strategic Construction's secondary office was located at 801 E. Plano Parkway, Suite 100, Plano, Texas 75075.  Strategic Construction relocated its satellite office at 2221 Lakeside Boulevard, Suite 1025, Richardson, Texas 75082.  *See* Plaintiffs' Complaint at ¶ 7; *see also* Exhibit 6, Partin Decl. at ¶¶ 8-9.

[63]  Exhibit 6, Partin Decl. at ¶ 10.

[64]  *See id.*  These employees currently office in Strategic Construction's Richardson, Texas office.  Prior to August 28, 2019, these employees worked in the Plano, Texas office.

[65]  Exhibit 6, Partin Decl. at ¶ 7.

[66]  *Id.* at ¶ 11.

[67]  *Id.* at ¶ 11.

[68]  *See* Plaintiffs' Complaint at ¶ 60.

appear to concede that venue is not proper under § 1400(a) as to any Construction Defendant other than (allegedly) Strategic Construction.

37.     These facts, as described in detail in the declarations of Robert Partin and Timothy G. Dixon, coupled with Plaintiffs' own failure to plead any facts that show any of the Construction Defendants reside in or may be found in the Eastern District, establish that venue is not proper in this District as to ***all*** of the Construction Defendants.  For the reasons set forth above, this case should be dismissed pursuant to Federal Rule 12(b)(3) and 28 U.S.C. § 1406(a).

**3.      Because venue for Plaintiffs' Copyright Claims is not proper in this District, venue over the entire action is improper and the case should be dismissed.**

38.     Because venue is lacking for Plaintiffs' Copyright Claims, venue over the entire action is improper and the case should be dismissed.  Plaintiffs all but concede that venue is not proper over each Defendant under 28 U.S.C. § 1400(a).[69]  Instead, they rely on 28 U.S.C. § 1391(b)(1) to establish venue over Plaintiffs' state-law Contract Claims.[70]  Plaintiffs' reliance on 28 U.S.C. § 1391 is misplaced.

39.     Section 1391 is the general venue statute, and is applicable only when no other statute provides for specific venue.  *See* 28 U.S.C. § 1391(a) ("Applicability of section. – Except as otherwise provided by law – . . . ."); *Collins v. Doe,* No. H-10-2882, 2012 WL 1414246, at *3 (S.D. Tex. Apr. 23, 2012) ("The general venue statute, 28 U.S.C. § 1391(b), governs most claims brought in federal court.  Copyright-infringement claims are an exception."); *Steen v. Murray,* 770 F.3d 698, 701 (8th Cir. 2014) ("***In the absence of a special venue statute***, 28 U.S.C. § 1391(b) governs where a federal civil action may be venued.") (emphasis added).  Here, the specific venue provisions of 28 U.S.C. § 1400(a) govern the Copyright Claims, and because

---

[69] *See id.* at ¶ 46.

[70] *Id.* at ¶ 47.

venue is not proper under § 1400(a), Plaintiffs cannot rely on § 1391 to supply venue over this action.

40.     Plaintiffs also incorrectly allege that venue in this District is proper under the doctrine of pendent venue.[71]  Under the doctrine of pendent venue, when a ***federal*** claim is filed in a court of proper venue, in the court's discretion venue can also be established over pendent state law claims if they arise out of a common nucleus of operative facts.   "Pendent venue" provides a limited general exception to the rule that venue must be proper for each defendant and each claim.  *See e.g., Gamboa v. USA Cycling, Inc.*, No. 2:12-cv-10051-ODW (MRWx), 2013 WL 1700951, at *4 (C.D. Cal Apr. 18, 2013) (recognizing that the "pendent venue" doctrine has received limited acceptance).  "Under this doctrine, 'a claim that is not properly venued standing alone can still be heard by a court as long as another properly venued claim arising out of a common nucleus of operative facts is also brought at the same time in the same district."  *Turner Indust. Grp., LLC,* 2011 WL 1314192, at *3.

41.     Accordingly, pendent venue applies only when there exists, in the first instance, a ***properly venued*** federal claim.  For the reasons shown above, the Copyright Claims—the only federal claims Plaintiffs have asserted—are not properly venued in the Eastern District.  This fact puts an end to the pendent venue inquiry.  Because the Copyright Claims are not subject to venue in the Eastern District, this Court cannot assert pendent venue over the Contract Claims even if they arise from a common nucleus of operative facts, which they do not.

42.     Accordingly, neither § 1391 nor the pendent venue doctrine can support venue in the Eastern District, and this Court should therefore dismiss this civil action for improper venue.

---

[71] *Id.* at ¶ 48 ("[V]enue lies in this District under the doctrine of pendant [sic] venue, because all of Plaintiffs' claims arise out of a common nucleus of operative facts.").

**B.    Alternatively, Motion to Transfer for Improper Venue**

43.    In the event this Court determines dismissal is not warranted despite improper venue, Defendants alternatively request that this Court transfer Plaintiffs' claims to the Southern District, where many of the Defendants reside and work, and where most, if not all, of the relevant facts took place.

**1.    Transfer Under 28 U.S.C. § 1406(a)**

44.    Where, as here, a plaintiff files an action in the wrong venue, a court is directed to "dismiss, or if it be in the interest of justice, transfer such case" to the proper venue.  28 U.S.C. § 1406(a).  Defendants respectfully request that this Court dismiss this action.  However, should the Court determine it would be in the interest of justice to transfer this case, Defendants request that this case be transferred to the Southern District, a court of proper venue.

**2.    Transfer Under 28 U.S.C. § 1404(a)**

45.    In the unlikely event this Court concludes that venue *is* proper in the Eastern District, Defendants respectfully request this Court transfer this case to the Southern District for the convenience of the parties and in the interest of justice under 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

46.    "The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Tinnus Enter., LLC*, 2015 WL 11090494, at *2.  Ultimately, it is within the district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its

discretion in light of the particular circumstances of the case.  *Id.* (citing *Hanby v. Shell Oil Co.*, 144 F.Supp.2d 673, 676 (E.D. Tex. 2001)).

47.      The party seeking transfer must show good cause for the transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient.  *Id.*  "The plaintiff's choice of venue is not a distinct factor in the analysis, but is taken into account as part of the defendant's burden in proving the transferee venue is clearly more convenient."  *Redi-Mix Solutions, Ltd.*, 2017 WL 3671377, at *4 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 315).

48.      The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Tinnus Enter., LLC*, 2015 WL 11090494, at *5.  If the answer is yes, then the district court will consider and balance the convenience of the parties in both venues.  *In re Volkswagen of America, Inc.*, 545 F.3d at 314-16.

49.      Specifically, the Court must consider certain private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).   "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious, and inexpensive."  *Redi-Mix Solutions, Ltd.*, 2017 WL 3671377, at *4 (quoting *In re Volkswagen AG*, 371 F.3d at 203)). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of

conflict of law or in the application of foreign law."  *Id.*  "No single factor is dispositive."  *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

        a.     ***The threshold issue is met — Plaintiffs could have sued in the Southern District.***

50.    Venue is proper in the Southern District.  Assuming, without conceding, the accuracy of Plaintiffs' allegations in the Complaint, there can be no dispute that Plaintiffs could have—and should have—brought their claims in the Southern District.  By way of example, but not limitation, the Complaint acknowledges that five (5) of the defendants sued in this case maintain an office in, and conduct business from Houston, Texas;[72] the property at the heart of this dispute is located and was constructed in Conroe, Texas;[73] a building application for the property was filed with the City of Conroe;[74] and acts of copyright infringement allegedly occurred when the property in Conroe was sold and/or leased.[75]  Thus, the threshold inquiry of proving that Plaintiffs' claims could have been brought in the Southern District is met.  As shown below, the private and public interest factors also weigh in favor of transferring this case to the Southern District.

        b.     ***The private interest factors weigh in favor of transfer.***

51.    The first factor, ease of access to sources of proof, favors transfer.  All of Defendants' paper and electronic documents in Texas potentially relevant to this case are located in Houston, Texas.[76]

---

[72] *See* Plaintiffs' Complaint at ¶¶ 10, 13, and 19-21 (allegations relating to Defendants Robert Partin, Timothy G. Dixon, Francisco Padua, Alejandro Padua, and Antonio Padua).

[73] *See id.* at ¶ 36 ("that certain property located in Conroe, Texas and known as Woodhaven Village . . . .").

[74] *Id.* at ¶ 62.

[75] *See id.* at ¶¶ 67, 69, and 70.

[76] Exhibit 1, Padua Decl. at ¶ 18.  Exhibit 2, Trout Decl. at ¶ 5.  Exhibit 4, CPF Decl. at ¶ 7.  Exhibit 5, Grace Decl. at ¶ 5.  Exhibit 6, Partin Decl. at ¶ 19.  Exhibit 7, Dixon Decl. at ¶ 13.

52.     The second factor, the ability to subpoena witnesses, also favors transfer.  The Court's ability to secure attendance at trial by subpoena is a factor that "generally weighs in favor of transfer when more non-party witnesses reside within the proposed venue than in the plaintiff's chosen venue." *Taylor,* 2011 WL 13134192, at *5 (citing *In re Volkswagen*, 545 F.3d at 316).  Under Federal Rule of Civil Procedure 45(c)(1)(A), a court's power to issue a deposition or trial subpoena extends to any witness who resides in the district or within 100 miles of where the deposition or trial is held.  Fed. R. Civ. P. 45(c)(1)(A).  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG,* 371 F.3d at 204-05.  When applying the "100 mile rule," the threshold question is whether the plaintiff's chosen venue—here, the Eastern District—and the proposed venue—the Southern District—are more than 100 miles apart.  *In re Volkswagen,* 545 F.3d at 317.  If so, then a court must determine the respective distances between the residences of all the identified relevant witnesses and the two venues under consideration.  *Id.*

53.     Here, the federal courthouse in Houston is located approximately 300 miles from the federal courthouse in Sherman—well in excess of the Fifth Circuit's 100-mile rule.[77]  Accordingly, the next step is to compare the respective distances between the residences of all identified relevant witnesses to the venues under consideration.  Numerous non-party witnesses expected to be called to testify at trial are within the subpoena range of the Southern District.

---

[77] The federal courthouse for the Houston Division is located at 515 Rusk Street, Houston, Texas 77002.  The federal courthouse for the Sherman Division is located at 101 E. Pecan Street, Sherman, Texas 75090.

54.     For example, the Defendants have identified in their declarations a number of non-party witnesses who are located in the greater Houston metropolitan area.[78]  Each of these witnesses are located within the subpoena range of the Southern District, but not the Eastern District.  Conroe, Texas is located approximately 40 miles from the Southern District, while Sugar Land, Texas is approximately 23 miles away.  Similarly, Katy, Texas is approximately 30 miles from the Southern District.  In contrast, Conroe and Sugar Land are located approximately 264 miles and 322 miles, respectively, from the federal courthouse in Sherman, while Katy, Texas is located approximately 325 miles from the Eastern District–Sherman Division.[79]  There is no question that more non-party witnesses are subject to the subpoena power of the Southern District than are subject to the subpoena power of this Court.  This factor, too, favors transfer.

55.     For the same reasons that the first and second factors favor transfer, so does the third factor—the cost of attendance for willing witnesses.  Many of the party and non-party witnesses live in or near Houston, Texas, and none are known to live in or near Sherman, Texas.  Thus, the inconvenience of attending depositions or trial within the Southern District is minimal, at best, compared to the Eastern District.

56.     Finally the fourth factor—other practical problems that make a trial of a case easy, expeditious, and inexpensive—also favors transfer.  Travel and lodging will be unnecessary for many of the parties and witnesses if this case is tried in Houston, and the logistics of transporting documents to the courthouse for trial will be minimal.  Accordingly, this factor also favors transfer.

---

[78] *See* Exhibit 1, Padua Decl., at ¶¶ 19-25.  *See also* Exhibit 2, Trout Decl., at ¶ 6.

[79] "The courts take judicial notice of the boundaries of the nation, of the location of states and territories, the location of the boundaries of the state in which the court is sitting, of counties, district and townships. The location and boundary of any incorporated city, as a subdivision of the state are judicially noticed, as well as locations of governmental buildings and institutions."  *Weaver v. United States*, 298 F.2d 496, 499 (5th Cir. 1962) (emphasis added).

c.     ***The public interest factors weigh in favor of transfer.***

57.     Only one public interest factor is implicated here—the interest of having localized interests decided at home.   The other factors are neutral—the administrative burden on the Eastern and Southern Districts are comparable, both courts are equally familiar with Texas law, which governs the Contract Claims in this dispute, and, relatedly, there are no known conflict-of-law issues.

58.     As shown above, this lawsuit arises from alleged acts and omissions that occurred exclusively within Houston and the surrounding areas, such as Conroe, Texas.   As such, the Southern District has a greater interest in deciding Plaintiffs' claims.

59.     For the foregoing reasons, if this Court declines to dismiss or transfer this action for improper venue, it should be transferred to the Southern District pursuant to 28 U.S.C. § 1404(a).   As discussed above, transfer would serve the convenience of the parties and the interests of justice.

60.     Given the specific facts and circumstances of this matter, the factors relating to the location of sources of proof, the court's ability to secure attendance, and the cost of attendance for witnesses weigh significantly in favor of transferring the case to the Southern District.  The remaining factors are neutral, and thus do not militate against transfer.  Thus, on balance, the Southern District is clearly more convenient.

## III.
## CONCLUSION AND PRAYER

For the foregoing reasons, Defendants MAKO, LLC d/b/a Padua Realty Company, Francisco Padua, Alejandro Padua, Antonio Padua, Padua Investments, Ltd., Luisfina Corporation, Woodhaven Inmobilia, Ltd., Bratten Inmobilia 2000, LLC, Inmobilia 2000, LLC, Texas Senior Living Manager, LLC, Texas Senior Living Group, LLC, Texas Senior Living

Operator, LLC, Cottages at Woodhaven Village, Ltd., Strategic Construction, Ltd., Partin Investments, LLC, W&P I Holdings, Inc., Robert Partin, Sovereign Builders Group, Ltd. d/b/a FCI Multi-Family Builders, Applied Architectural Products, Inc., Timothy G. Dixon, FCI Multi-Family GP, LLC, FCI Multi-Family Holdings, LLC, Propero Conroe, LLC, Propero Seniors Housing Equity Fund, LLC, CPF Living Communities II-Woodhaven, LLC, CPF Living Communities Acquisitions, LLC, Grace Management, Inc., and Ted Trout Architect & Associates, Ltd. ("Defendants") request that this motion be granted, and that the Court dismiss Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, Defendants request that the Court transfer this case to the Southern District of Texas, Houston Division, for improper venue under 28 U.S.C. § 1406(a).  In the further alternative, Defendants request that this Court transfer Plaintiffs' claims to the Southern District for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

_/s/ Paul L. Mitchell_

Paul L. Mitchell
Texas Bar No. 14217920
pmitchell@hicks-thomas.com
Courtney Ervin
Texas Bar No. 24050571
cervin@hicks-thomas.com
Leah M. Graham
Texas Bar No. 24073454
lgraham@hicks-thomas.com
HICKS THOMAS LLP
700 Louisiana, Suite 2000
Houston, Texas 77002
(713) 547-9100 (Telephone)
(713) 547-9150 (Facsimile)

COUNSEL FOR DEFENDANTS MAKO, LLC
D/B/A PADUA REALTY COMPANY,
FRANCISCO PADUA, ALEJANDRO
PADUA, ANTONIO PADUA, PADUA
INVESTMENTS, LTD., LUISFINA
CORPORATION, WOODHAVEN
INMOBILIA, LTD., BRATTEN INMOBILIA,
LLC, INMOBILIA 2000, LLC, TEXAS
SENIOR LIVING MANAGER, LLC, TEXAS
SENIOR LIVING GROUP, LLC, TEXAS
SENIOR LIVING OPERATOR, LLC, AND
COTTAGES AT WOODHAVEN VILLAGE,
LTD.

_/s/ Robert P. Latham_

Robert P. Latham
Texas Bar No. 11975500
blatham@jw.com
Justin V. Lee
Texas Bar No. 24097982
jlee@jw.com
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, Texas  75201
(214) 953-6000 (Telephone)
(214) 661-6663 (Facsimile)

Jennifer Caughey
Texas Bar No. 24080826
jcaughey@jw.com
JACKSON WALKER LLP
1401 McKinney St., Suite 1900
Houston, Texas  77010
(713) 752-4388 (Telephone)
(713) 308-4188 (Facsimile)

COUNSEL FOR DEFENDANTS PROPERO
CONROE, LLC, PROPERO SENIORS HOUSING
FUND, LLC, CPF LIVING COMMUNITIES II-
WOODHAVEN, LLC, CPF LIVING
COMMUNITIES II ACQUISITIONS, LLC, AND
GRACE MANAGEMENT, INC.

_/s/ Jessica L. Mangrum_

Jessica L. Mangrum
Texas Bar No. 24037021
jmangrum@thompsoncoe.com
THOMPSON COE, COUSINS & IRONS, LLP
700 Brazos, Suite 1500
Austin, Texas  78701
(512) 703-5014 (Telephone)
(512) 708-8777 (Facsimile)

COUNSEL FOR DEFENDANT TED TROUT
ARCHITECT AND ASSOCIATES, LTD.

_/s/ Patrick E. "Gene" Blanton_

Patrick E. "Gene" Blanton
Texas Bar No. 24058209
gblanton@slatesharwell.com
SLATES HARWELL, LLP
1700 Pacific, Suite 3800
Dallas, Texas  75201
(469) 317-1050 (Telephone)
(469) 317-1155 (Facsimile)

COUNSEL FOR DEFENDANTS STRATEGIC
CONSTRUCTION, LTD. D/B/A/ FCI MULTI-
FAMILY, PARTIN INVESTMENTS, LLC,
W&P I HOLDINGS, INC., ROBERT PARTIN,
SOVEREIGN BUILDERS GROUP, LTD.
D/B/A FCI MULTI FAMILY BUILDERS,
APPLIED ARCHITECTURAL PRODUCTS,
INC., TIMOTHY D. DIXON, FCI MULTI-
FAMILY GP, LLC, AND FCI MULTI-FAMILY
HOLDINGS, LLC

## CERTIFICATE OF SERVICE

I certify that on September 20, 2019, I caused a copy of this motion to be served through the Court's ECF system on the following counsel of record:

Patrick Zummo
pzummo@zoomlaw.com
LAW OFFICES OF PATRICK ZUMMO
Two Houston Center
909 Fannin, Suite 3500
Houston, Texas  77010

Timothy Micah Dortch
mdortch@potts−law.com
POTTS LAW FIRM LLP − DALLAS
2911 Turtle Creek Blvd, Suite 1000
Dallas, Texas  75219
_Counsel for Plaintiffs Zelma M. Loeb-Defever_
_and Loeb Architects, LLC_

_/s/ Paul L. Mitchell_

Paul L. Mitchell